UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:25-CR-053-E-BR-1 |
| | § | |
| DONALD RAY MCCRAY, | § | |
| | § | |
| Defendant. | § | |

**<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO FIND
DEFENDANT COMPETENT TO STAND TRIAL</u>**

This matter has been referred to the undersigned United States Magistrate Judge for a recommendation on Defendant's competency to stand trial pursuant to 18 U.S.C. § 4241. (ECF 63). For the following reasons, the undersigned finds by a preponderance of the evidence that Defendant is not presently suffering from any mental disease or defect that would render him unable to understand the nature and consequences of this proceeding or unable to participate in his defense. *See* 18 U.S.C. § 4241(d). Accordingly, the undersigned RECOMMENDS that the presiding United States District Judge find the Defendant competent to stand trial, and proceed to the question of Defendant's capacity to represent himself without an attorney.

## I.   PROCEDURAL BACKGROUND

Defendant initially appeared before the undersigned on June 30, 2025 in connection with a four-count criminal indictment alleging two counts of Mailing a Threatening Communication in violation of 18 U.S.C. § 876(c) (counts 1 and 3) and two counts of False Information and Hoax in violation of 18 U.S.C. § 1038(a)(1). (*See* ECF 1 (Indictment) *and* ECF 12 (Initial Appearance Hearing Transcript)). At his initial appearance, Defendant orally moved the Court for leave to

proceed pro se; the undersigned appointed counsel for Defendant and set a hearing for Defendant's motion for July 11, 2025. (ECF 10).

On July 8, 2025, Defendant's appointed counsel moved for a psychiatric examination to determine whether Defendant is competent to stand trial. (ECF 17). Based on that motion, the undersigned vacated the July 11, 2025 *Faretta* hearing, to be reset after the question of competency had been resolved. (ECF 19).[1] The then-presiding[2] United States District Judge granted Defendant's motion for a psychiatric examination. (ECF 20). The Court received the examination report from the Federal Bureau of Prisons under seal on December 11, 2025. (ECF 59).

On December 23, 2025, by a sealed electronic Order, the then-presiding District Judge referred the matter of Defendant's competency to the undersigned United States Magistrate Judge for a hearing and recommendation. (ECF 63). The undersigned set a competency hearing, noting that Defendant's request to represent himself was still pending and advising the Defendant that he would "be represented by his appointed attorney at this hearing, and [would] be afforded an opportunity to present evidence to the Court." (ECF 65 at 2). On January 27, 2026, the parties filed under seal a stipulation, signed by counsel for both parties and by the Defendant, indicating their agreement that the doctor who had examined Defendant would testify that he was competent if she were called to the stand at the hearing. (ECF 68).

---

[1] The law requires that a defendant whose competency to stand trial is at issue must be represented by counsel. 18 U.S.C. §§ 4241(c), 4247(d) ("[T]he person whose mental condition is the subject of the hearing *shall* be represented by counsel[.]") (emphasis added); *accord United States v. Sterling*, 99 F.4th 783, 799 (5th Cir. 2024) ("[W]here a court has reasonable cause to question the defendant's competency, it must appoint counsel for the defendant until that doubt is extinguished.").

[2] This currently-presiding United States District Judge is the fifth to have been assigned to this case, the four previous District Judges having recused in response to Defendant's behavior more fully described below. (*See* ECF 18, 51, 62, *and* 64).

On January 30, 2026, the parties appeared before the undersigned for the competency hearing. (*See* ECF 69) (minute entry). Shortly after entering the courtroom, before the undersigned could call the case, the Defendant began to loudly and aggressively voice complaints about the fact that he is currently represented by counsel. When instructed to control himself and informed that appointed counsel would continue to represent him for the hearing, Defendant's behavior escalated to shouted obscenities and verbal threats of violence against the undersigned and her family.[3] When it became clear that Defendant would persist in disrupting the competency hearing, the undersigned directed the United States Marshals to remove him from the courtroom.

The Court recessed from the hearing, hopeful that it would be able to proceed once Defendant had been given a chance to calm down. After several minutes, when Defendant's shouted obscenities and threats could no longer be heard from the courtroom, Defendant's counsel attempted to confer with him and encourage him to resume the hearing. This conference reignited Defendant's disruptive behavior, and the Court adjourned entirely.

## II.   FACTUAL BACKGROUND

At the outset, a partial review of Defendant's criminal and litigation history helps contextualize the current criminal proceeding and some of the statements made by Defendant that created reasonable cause to investigate Defendant's competence. The facts recited in this section are drawn from publicly accessible court filings and orders and can be confirmed by official

---

[3] The undersigned has declined, at this time, to recuse herself from this matter in response to Defendant's verbal threats. The law requires judicial recusal when a judge has an actual personal bias or prejudice or when the judge's impartiality might reasonably be questioned by an objective observer. 28 U.S.C. §§ 144, 455. However, no party to any proceeding is entitled to abuse judicial recusal as a litigation tactic. *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 Fed. App'x 324, 329 (5th Cir. 2011); *accord United States v. Quintanilla*, 114 F.4th 453, 469 n.17 (5th Cir. 2024)). Accordingly, the undersigned will not recuse herself when doing so might encourage a defendant to use threats of violence as a tool to control which judges hear their case; however, the undersigned might recuse from this matter in the future if a situation arises that would prompt a reasonable observer to question her impartiality.

information published by the Texas Department of Criminal Justice ("TDCJ") or by the Texas Judicial Branch. Such facts are subject to judicial notice. FED. R. EVID. 201(b)(2).

In 1992, Defendant was convicted of murder and sentenced to thirty-five years in prison, a sentence that was upheld on direct appeal and was not taken up to the Texas Court of Criminal Appeals. *McCray v. State*, 861 S.W.2d 405, 406 (Tex. App.—Dallas 1993, no writ). Since that decision, he has opposed his incarceration by frequent frivolous civil suits filed in various jurisdictions.[4] In 1996, the federal Fifth Circuit Court of Appeals barred him from filing any pro se, in forma pauperis action in any court in the Fifth Circuit without prior written permission. *McCray v. Lower*, 96 F.3d 1443 (5th Cir. 1996) (per curiam, unpublished opinion). Multiple Texas state courts have done the same. *See McCray v. Glass*, 2022 WL 1591352, *1 (Tex. App.—Austin May 20, 2022, no pet.). The Supreme Court of the United States has imposed similar restrictions on Defendant. *See McCray v. Clerk of Court*, 562 U.S. 806 (2010).

While incarcerated, Defendant was also convicted for retaliation against a public servant for making death threats to a Texas state court judge, and this conviction was also upheld on appeal. *McCray v. Texas*, 2020 WL 5032838 (Tex. App.—Amarillo Aug. 25, 2020, no pet.). In 2021, in what may have been an attempt to challenge that conviction, Defendant filed a civil complaint by mail in the United States District Court for the Eastern District of New York, naming the following defendants: The State of Texas; the TDCJ; Potter County, Texas; and the Clerk of

---

[4] One of Defendant's past civil suits in this Court (the "New York Complaint") is directly relevant to the instant proceeding and is discussed in full below; another is worth briefly mentioning here for the context it may provide to some of Defendant's statements and behaviors. In that case, *McCray v. FBI*, No. 3:11-CV-087, Defendant sought to compel officers of the Federal Bureau of Investigation to prosecute him for making threats to judicial officers and employees. The suit, construed as one for mandamus, was dismissed under the Fifth Circuit's sanctions order. *McCray v. FBI*, 2011 WL 690211 (N.D. Tex. Jan. 29, 2011) (Ramirez, J.); *recommendation adopted*, 2011 WL 621679 (N.D. Tex. Feb. 15, 2011) (Lindsay, J.).

Court for the Seventh Court of Appeals of Texas. The undersigned will subsequently refer to this as the "New York Complaint."

Because all named defendants were located in Texas, and because the complaint appeared to focus on Defendant's criminal conviction in Potter County, the presiding District Judge in New York transferred the case to this Court pursuant to 28 U.S.C. § 1391(b). The case was assigned the cause number 2:21-cv-155, and the United States District Clerk was instructed to unfile the pleading by application of the Fifth Circuit's 1996 sanctions order. Defendant appealed to the Fifth Circuit, where the case was numbered 23-10308, and the Clerk's Office for the Fifth Circuit was directed to dismiss the appeal for failure to timely pay the necessary docketing fee.

In the instant criminal matter, Defendant is indicted for allegedly mailing threatening communications to United States District Judges in Brooklyn, New York and in Fort Worth, Texas, and for allegedly sending fake biological agents as a hoax to the United States Courthouses in Amarillo, Texas and Fort Worth, Texas. (ECF 1 at 1–4). These activities allegedly occurred in March of 2025. (*Id.*).

### III.   LEGAL STANDARD

Under the common law, and under Constitutional guarantees of due process, a defendant cannot be prosecuted if they are not competent to stand trial. *See Indiana v. Edwards*, 554 U.S. 164, 169–70 (2008) *and Drope v. Missouri*, 420 U.S. 162, 171–72 (1975). A defendant is mentally competent to stand trial[5] if they have (1) a present ability to consult with their lawyer with a reasonable degree of rational understanding and (2) a rational and factual understanding of the proceedings against them. *United States v. Jackson*, 140 F.4th 263, 268 (5th Cir. 2025) (citing

---

[5] The competency standard to stand trial is distinct from the standard of capacity for a defendant to represent themselves at that trial. *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008); *see also Jackson*, 140 F.4th at 268.

*Dunn v. Johnson*, 162 F.3d 302, 305 (5th Cir. 1998) and *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

These requirements have been codified by statutes that come into play when "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). In such a situation, "the court shall grant [a Government] motion, or shall order . . . on its own motion," that a competency hearing be held. *Id.*

At the hearing, the defendant must be represented by counsel. *See supra* n.1, 18 U.S.C. §§ 4241(c), 4247(d), *and Sterling*, 99 F.4th at 799. The defendant must also "be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. § 4247(d).

If a court finds, after a hearing and by a preponderance of the evidence, that a defendant is incompetent, then the defendant must be hospitalized until medical treatment has restored competency, or else until the pending charges are "disposed of according to law; whichever is earlier." *Id.* at 4241(d)(1)–(2).

## IV.    EVIDENCE

At his initial appearance before the undersigned, the Defendant made numerous statements that called into question his understanding of the ongoing legal proceedings. First, he announced immediately upon entering the courtroom that he desired to make an "opening statement." (ECF 12 at 2). Upon being advised of his constitutional right to remain silent, he immediately responded, "I waive that right." (*Id.* at 3). Shortly afterwards, he indicated that he meant the "waiver" in the context of his desire to represent himself. (*Id.* at 3–4).

Later, when asked about his financial resources, Defendant stated, "I've been illegally aggravated kidnapped by the Texas Department of Criminal Justice Institutional Division." (*Id.* at 7). He repeated this claim later when discussing his past frustrations with stand-by counsel, directed the Court to his New York Complaint, and then declared unprompted, "I made two premeditated attempts to kill, murder, U.S. President Joe Biden while in Washington DC, while in office, and I made two premeditated attempts to kill, murder, Kevin [McCarthy], . . . the House Speaker in Washington, DC in September of 2025." (ECF 12 at 8–9).

When reminded by the undersigned that the Government could use such statements against Defendant in this criminal case, Defendant responded, "I want them to." (*Id.* at 10). He then expressed frustration that the names of victims were not included in his indictment, and verbally reasoned that the judges who should have been named as victims would then have had to "come to this courthouse and sit on this stand and testify" about his case. (*Id.*).

When questioned as to his understanding of the charges against him, Defendant objected to characterization of his actions as "mailing a threatening communication" because, in his words, "It was intended to kill him and murder him. It wasn't anything to threaten him." (*Id.* at 12). Similarly, Defendant objected to the charges of "false information and hoax" on the grounds that he mailed envelopes of white powder to two different courthouses "[w]ith intent to kill and murder." (*Id.* at 16).

Repeatedly throughout his initial appearance, Defendant invoked the idea that he has been "illegally aggravated kidnapped" and that a "crime of treason was committed against the United States State of the Union" as Defendant believes he proved in the New York Complaint. (*Id.* at 18; *see also id.* at 7, 8, 17–21). Those pleadings, for their part, comprise fifty-nine pages that alternate between, on the one hand, official documents connected with Defendant's criminal prosecution

for retaliation against a public servant, and on the other, handwritten pages of Defendant's allegations. *See McCray v. Texas*, N.D. Tex. Cause No. 2:21-cv-155, ECF 1. Defendant's claims in the civil case appear to have been predicated on the theory that his criminal conviction revealed a conspiracy by a shadow government that has effectively withdrawn Texas from the United States and has singled him out individually for punishment. *Id.*

Defendant was evaluated from July 21 through August 19, 2025 by Dr. Lisa Bellah, Ph.D. at the Federal Medical Center ("FMC") in Fort Worth, Texas. (ECF 59 at 2). Dr. Bellah issued her report September 16, 2025. (*Id.*). Her evaluation of Defendant was conducted by clinical interviews, collateral interviews with other staff at the FMC who interacted with Defendant, and a review of a selection of Defendant's medical and legal records. (*Id.* at 2–3). She noted that Defendant refused to complete diagnostic assessments or psychological testing. (*Id.* at 3, 5).

Defendant discussed his theory—that the TDCJ has kidnapped him—with Dr. Belah. (*Id.* at 4–5). According to his clinical interviews, this theory stems from how penalties for assaulting corrections officers were administratively adjudicated by the TDCJ, rather than in state courts. (*Id.*). Dr. Bellah interpreted these statements and Defendant's theories as resulting, not from delusion, but from "misinterpret[ing] aspects of the law as he was attempting to apply them to his situation." (*Id.* at 4).

Ultimately, Dr. Bellah found that Defendant "demonstrated an accurate understanding of the nature of his current charges" and "evinced adequate understanding of the fact that he can receive a term of incarceration if he is determined to be guilty[.]" (*Id.* at 6). Based on these and other observations, Dr. Bellah concluded that "there is insufficient evidence to indicate [Defendant] currently suffers from a mental disease or defect that negatively impacts his ability to understand the nature or consequences of his charges or to properly assist in his defense." (*Id.*

at 7). In the stipulation filed by the parties, they agree that Dr. Bellah, if she were called to testify before the Court, would testify in accordance with her report. (ECF 68 at 1).

## V.   ANALYSIS

The probable cause to question Defendant's competency to stand trial arose from his repeated statements in open court that were facially harmful to any interest he might have in being acquitted of charges in this case. For the following reasons, having considered the psychiatric report and after giving Defendant an opportunity to present evidence as to his own competency, the undersigned finds that Defendant is competent by a preponderance of the evidence.

First, there is no evidence that Defendant is suffering from a mental disease or defect at all. When he arrived at the FMC in Fort Worth, Texas, he was accompanied by a prescription for the antipsychotic drug haloperidol, originally prescribed for "mental disorder, not otherwise specified." (ECF 59 at 5). Defendant informed Dr. Bellah that he did not know why he had been prescribed that medication, had not taken it previously, and did not believe he needed it, and the prescription was discontinued because he refused to consent to it. (*Id.*). His only other medication while housed at the FMC was acetaminophen for management of neck pain. (*Id.*).

Though his assessment of his own legal situation is in some ways absurd, there is no reason to think it results from delusion or mental defect, rather than from simple misunderstandings of facts and of the law. For example, Defendant's obstructive behavior at his January 30, 2026 competency hearing was apparently motivated by the belief that he had been denied the right to represent himself, and that the undersigned had made that determination solely out of anger at his behavior at his initial appearance. That belief on the part of Defendant was incorrect, and involved mistakes on both the facts and the law pertaining to the situation, but it did not result from any mental disease or defect or delusion.

Similarly, Defendant has demonstrated an understanding of the nature of the legal proceedings in which he is involved. At his inchoate competency hearing, he referred back to his initial appearance and the discussions of representation by counsel that occurred at that hearing seven months earlier. In his conversations with Dr. Bellah, he:

> demonstrated an accurate understanding of the nature of his current charges. He also evinced adequate understanding of the fact that he can receive a term of incarceration if he is determined to be guilty of the charges. He appeared to have an accurate understanding of the possible sentencing ranges for each of the charges listed in the indictment."

(*Id.* at 6). He also demonstrated a "good understanding of the roles of various courtroom personnel" and "adequate understanding of more abstract legal concepts[.]" (*Id.*).

Similarly, though some of his behaviors reveal an unwillingness to assist in his own defense, there is no evidence that he is incapable of doing so. In fact, much of his obstructive behavior has been directly rooted in his consistent request that he be allowed to represent himself and to present his defense on his own terms.

Finally, the Defendant himself is opposed to hospitalization for mental health treatment, as would be necessary if he were found incompetent to stand trial. Defendant refused to take antipsychotic medication when it was available to him and was adamant that he did not need it. (*Id.* at 5–6). Any involuntary institutionalization for mental health treatment to "restore" competency would involve an extreme intrusion against Defendant's liberties, and there is no evidence that such intrusion is warranted.

Though the issue of Defendant's self-representation is not presently before the undersigned, its centrality to proceedings thus far warrants a brief final note. The Supreme Court has held that a defendant may be competent to stand trial, but not capable of representing themselves at that trial. *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008). The Fifth Circuit has interpreted this as creating a "liminal space" for "exceptional circumstances." *United States v.*

*Jackson*, 140 F.4th 263, 271 (5th Cir. 2025); *accord Edwards*, 554 U.S. at 176. Accordingly, if the presiding District Judge adopts the undersigned's recommendation to find Defendant competent to stand trial, that finding may impact the subsequent resolution of Defendant's request to proceed pro se.

## VI.   CONCLUSION

For the reasons above, the undersigned FINDS by a preponderance of the evidence that Defendant is not presently suffering from any mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Accordingly, the undersigned RECOMMENDS that the presiding District Judge find Defendant competent to stand trial.

## VII.   INSTRUCTIONS FOR SERVICE

Defendant's appointed attorney is ORDERED to ensure Defendant is provided with a copy of this recommendation.

ENTERED on February 2, 2026.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, FED. R. CIV. P. 5(b)(2)(C), or transmission by electronic means, FED. R. CIV. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b), FED. R. CIV. P. 72(b)(2), *and* FED. R. CIV. P. 6(d).

11

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendations set forth by the Magistrate Judge and accepted by the District Judge. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).