UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:25-CR-053-X-BR-1 |
| | § | |
| DONALD RAY MCCRAY, | § | |
| | § | |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SELF-REPRESENTATION

This matter has been referred to the undersigned United States Magistrate Judge for a recommendation on Defendant's motion to proceed *pro se*—i.e., to represent himself in his criminal defense—pursuant to 28 U.S.C. § 1654. (ECF 84). For the following reasons, the undersigned finds that Defendant has clearly, unequivocally, knowingly, and intelligently waived his Sixth Amendment right to counsel, but has subsequently waived his right to represent himself by deliberate and serious obstructionist conduct. Accordingly, the undersigned RECOMMENDS that the presiding United States District Judge DENY the Defendant's request to represent himself.

### I.   PROCEDURAL BACKGROUND

Defendant initially appeared before the undersigned on June 30, 2025 in connection with a four-count indictment alleging two counts of Mailing a Threatening Communication in violation of 18 U.S.C. § 876(c) (counts 1 and 3) and two counts of False Information and Hoax in violation of 18 U.S.C. § 1038(a)(1). (*See* ECF 1 (Indictment) *and* ECF 12 (Initial Appearance Hearing

Transcript)).[1] At his initial appearance, Defendant orally moved the Court for leave to proceed pro se; the undersigned appointed counsel for Defendant and set a *Faretta* hearing for Defendant's motion for July 11, 2025. (ECF 10); *see Faretta v. Cal.*, 422 U.S. 806 (1975).

On July 8, 2025, Defendant's appointed counsel moved for a psychiatric examination to determine whether Defendant is competent to stand trial. (ECF 17). Based on that motion, the undersigned vacated the July 11, 2025 *Faretta* hearing, to be reset after the question of competency had been resolved. (ECF 19).[2] The Court received the examination report from the Federal Bureau of Prisons under seal on December 11, 2025. (ECF 59).

By a sealed electronic Order, the then-presiding United States District Judge[3] referred the matter of Defendant's competency to the undersigned United States Magistrate Judge for a hearing and recommendation. (ECF 63). The undersigned set a competency hearing, noting that Defendant's request to represent himself was still pending and advising the Defendant that he would "be represented by his appointed attorney at this hearing, and [would] be afforded an opportunity to present evidence to the Court." (ECF 65 at 2). On January 27, 2026, the parties filed under seal a stipulation, signed by counsel for both parties and by the Defendant, indicating their

---

[1] The factual background of the allegations against Defendant was recounted in the undersigned's February 2, 2026 Findings, Conclusions, and Recommendation to Find Defendant Competent to Stand Trial, and will not be recounted here. (*See* ECF 70 at 3–5), available online at *United States v. McCray*, 2026 WL 614866, 2026 LX 160843 (N.D. Tex. Feb. 2, 2026). By contrast, much of the procedural history recounted there is reproduced here, because Defendant's conduct in this case is relevant to his request to represent himself.

[2] The law requires that a defendant whose competency to stand trial is at issue must be represented by counsel. 18 U.S.C. §§ 4241(c), 4247(d) ("[T]he person whose mental condition is the subject of the hearing *shall* be represented by counsel[.]") (emphasis added); *accord United States v. Sterling*, 99 F.4th 783, 799 (5th Cir. 2024) ("[W]here a court has reasonable cause to question the defendant's competency, it must appoint counsel for the defendant until that doubt is extinguished.").

[3] The currently-presiding District Judge is the fifth to have been assigned to this case, the four previous District Judges having recused, possibly in response to Defendant's conduct. (*See* ECF 12 at 13, 18, 48 at 5, 51, 62, *and* 64).

agreement that the doctor who had examined Defendant would testify that he was competent if she were called to the stand at the hearing. (ECF 68).

On January 30, 2026, the parties appeared before the undersigned for the competency hearing. (*See* ECF 71) (transcript). Shortly after entering the courtroom, before the undersigned could call the case, the Defendant began to loudly and aggressively voice complaints about the fact that he is currently represented by counsel. (*Id.* at 2). When instructed to control himself and informed that appointed counsel would continue to represent him for the competency hearing, Defendant's behavior escalated to shouted obscenities and verbal threats of violence against the undersigned and her family. (*Id.* at 2–3).[4] When it became clear that Defendant would persist in disrupting the hearing, the undersigned directed the United States Marshals to remove him from the courtroom. (*Id.* at 3).

Based on the contents of the psychiatric report, and on Defendant's own statements in the record, the undersigned recommended that Defendant be found competent to stand trial. (*See generally* ECF 70). The presiding United States District Judge adopted the recommendation on March 4, 2026. (ECF 79).

On March 4, 2026, Defendant's appointed counsel moved for a hearing on Defendant's persistent request to represent himself. (ECF 81). The District Judge referred that motion to the undersigned. (ECF 84). Defendant appeared before the undersigned for the hearing on March 11, 2026. (ECF 89). Once again, shortly after entering the courtroom, Defendant attempted to assert control over the proceedings. Asserting that no *Faretta* hearing was necessary because the law

---

[4] The undersigned declined to recuse in response to those threats. (ECF 70 at 3 n.3). The threats have been repeated as described below, but the undersigned continues to decline to recuse for the same reasons. If a situation arises in the future that would lead a reasonable observe to question her impartiality, the undersigned might recuse in response to that situation.

guarantees him the right to represent himself,[5] Defendant declared that a "detention hearing" was the only proceeding before the undersigned in which he would participate.[6] He then attempted to leave the courtroom, and when asked by the undersigned if he was waiving his right to a *Faretta* hearing, he confirmed that he had no intention of participating and voluntarily left.

The Court then transitioned to arraignment proceedings[7] and established a video teleconference connection to the courthouse holding cell. The undersigned then attempted to ensure Defendant understood the charges listed in the indictment[8] and the possible sentences they carry. Defendant explicitly indicated he would not be participating in the arraignment, and he spent the entirety of the hour-long hearing singing loudly in the holding cell to disrupt proceedings. Though the Court was able to silence the audio streaming into the courtroom, permitting the undersigned and counsel to proceed, the Defendant's singing made it almost impossible to hear those proceedings in the holding cell, as confirmed by the Deputy United States Marshall who was in the holding area with Defendant. Accordingly, the Court ordered the Government to produce a written notice of the maximum statutory penalties associated with the charges in the indictment,

---

[5] For clarity, Defendant is correct that the law does not require a hearing prior to granting a Defendant's motion for self-representation. *Wiggins v. Procunier*, 753 F.2d 1318, 1320 (5th Cir. 1985); *accord Higginbotham v. Louisiana*, 817 F.3d 217, 223 n.7 (5th Cir. 2016).

[6] As the Court has explained in previous orders, a detention hearing is not necessary in this case because Defendant is currently serving sentences of incarceration for past crimes, so the question of his detention pending trial is moot. (*See, e.g.*, ECF 72). Defendant's goal, as he has explained it in open court and in multiple *pro se* filings, is to litigate what he perceives to be his illegal captivity by the Texas Department of Criminal Justice. (*See, e.g.*, ECF 12 at 17–18). It goes without saying that these criminal proceedings are an improper vehicle for him to assert such claims.

[7] The details of Defendant's arraignment are relevant to the instant inquiry only as an example of his dilatory misconduct.

[8] Defendant has previously demonstrated extensive familiarity with his indictment. For example, at his initial appearance, he complained that the indictment did not name his intended victims, and that it inadequately represented Defendant's actual intent to murder those victims. (ECF 12 at 10–12). His *pro se* filings have also repeatedly made reference to the indictment. (*E.g.*, ECF 87 at 1–2) ("Comes now . . . Defendant . . . for four 4 jury trials as charged in each indictment . . . pursuant to the March 7, 2025 federal grand jury charges[.]") (internal punctuation omitted). Defendant's counsel also confirmed at the arraignment that his client was familiar with the charges and stated his belief that Defendant understood the charges against him.

and that written notice was delivered to Defendant in the holding cell. (*See* ECF 92). Defendant asked the Marshall to place the document under the cell door, which he did.

## II.     LEGAL STANDARD

Congress has established that parties in federal courts are generally permitted to represent themselves. 28 U.S.C. § 1654. For defendants in criminal cases, the Supreme Court has held that the same right is granted implicitly by the Sixth Amendment to the Constitution. *Faretta v. Cal.*, 422 U.S. 806, 834–835 (1975). There is a natural tension between this right to self-representation and the Sixth Amendment's explicit guarantee of the right to assistance of counsel. U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.").

From the beginning of a criminal case, the right to assistance of counsel is in force, and it can only be superseded by an affirmative assertion of the right to self-representation by the defendant. *Neal v. Tex.*, 870 F.2d 312, 314 (5th Cir. 1989). A waiver of the right to counsel in favor of the right to self-representation is only effective if knowingly and intelligently made. *Faretta*, 422 U.S. at 835. The record must reflect that the waiver was clear and unequivocal. *Neal*, 870 F.2d at 314. The trial court must ensure these standards are satisfied before granting a motion for self-representation and withdrawing appointed counsel. *Id.* (quoting *McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir. 1985)).

Once a defendant has knowingly and intelligently elected to represent himself, there are few exceptions that could justify a court's decision to withhold that right. For example, a defendant, though mentally competent to stand trial, could lack the mental capacity to represent themselves. *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008); *but see United States v. Jackson*, 140 F.4th 263, 271 (5th Cir. 2025) (holding that *Edwards* creates a "liminal space" for "exceptional" circumstances).

For another example, a court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46 (citing *Illinois v. Allen*, 397 U.S. 337 (1970)). This is particularly appropriate if the misconduct "may be interpreted as a delay tactic." *United States v. Hill*, 63 F.4th 335, 349 (5th Cir. 2023). If a defendant's misconduct is so extreme as to require his removal from the courtroom, the reappointment of counsel may be a positive necessity. *Id.* at 349–50 (collecting cases).

### III.    ANALYSIS

Defendant first invoked the right to represent himself at his initial appearance before the undersigned on June 30, 2025. (ECF 12 at 3–4). He initially asserted the right as a waiver of the right to remain silent; he later reasserted it as a waiver of the right to assistance of counsel. (*Id.* at 4–5). At that hearing, the undersigned found that Defendant financially qualified for the appointment of counsel, and explained to Defendant that the Federal Public Defender's Office would be appointed to the case, and would function at least as stand-by counsel until the matter of Defendant's self-representation had been resolved. (*Id.* at 7–8).

As noted above, a determination on Defendant's motion to represent himself was then delayed by proceedings to determine whether he is competent to stand trial. (*See generally* ECF 70). The next expression on the record of Defendant's intent to waive the right to counsel occurred at the competency hearing, where Defendant's belief that his right to self-representation was being violated provoked him to threaten violence against the undersigned. (ECF 71 at 2). In subsequent *pro se* filings, Defendant has repeated both the demand for self-representation and the threats against the undersigned for what he perceives as the improper frustration of that demand. (ECF 74 at 1–2 *and* ECF 78 at 2–6).

As a threshold matter, this is more than adequate to establish a "clear and unequivocal" record of Defendant's affirmative waiver of the right to assistance by counsel. *See Neal*, 870 F.2d

at 314. There is also evidence that it has been knowingly and intelligently made. It is not the result of coercion or mistreatment of the Defendant, who first invoked the waiver before he had ever conversed with appointed counsel. *See McQueen*, 755 F.2d at 1177. The Defendant has stated on the record that he understands the charges brought against him, and has objected to them primarily on the grounds that, first, they do not name his intended victims, and second, they do not reflect how seriously he intended to harm those victims. (ECF 12 at 11–16). In his psychiatric evaluation for competency proceedings, Defendant reported that he was 67 years old, and that he graduated high school in 1977. (ECF 59 at 4). He also demonstrated an adequate understanding of courtroom proceedings and legal concepts. (*Id.* at 6).

However, there is also a more than adequate record in this case of Defendant "deliberately engag[ing] in serious and obstructionist misconduct." *See Faretta*, 422 U.S. at 834 n.46. He has tried to assert control over each of the three in-court proceedings that have occurred in this matter. (*See* ECF 12 at 2 *and* ECF 71 at 2). Though his primary focus for most of this case has been on asserting his right to represent himself, when the time to vindicate that right had finally arrived, he deployed the same misconduct to frustrate the Court's consideration of his own motion. Finally, his behavior during arraignment, as described above, caused a hearing that can normally be completed in less than ten minutes to take a full hour. (*See* ECF 91) (minute entry).[9]

---

[9] Defendant's obstructionist misconduct is not limited to the courtroom. On August 5, 2025, while inquiries into Defendant's competency were ongoing, the then-presiding District Judge denied a collection of *pro se* motions on the grounds that Defendant was still represented by counsel and not entitled to dual representation. (ECF 29) (citing *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978)). Despite the District Judge's instructions, Defendant has subsequently made no less than thirty-two different *pro se* filings, each of which frustrates the judicial process and wastes resources by requiring full review of each motion and orders to dispose of those numerous motions. (ECF 30, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 45, 47, 48, 49, 50, 52, 53, 54, 55, 56, 57, 58, 66, 74, 76, 77, 78, 86, 83, *and* 87).

## IV.    CONCLUSION

Accordingly, the undersigned finds that Defendant has deliberately engaged in serious obstructionist conduct as a delay tactic, and that he has impermissibly attempted to use the right of self-representation as "a license to abuse the dignity of the courtroom." *See Faretta*, 422 U.S. at 834 n.46.

For the reasons above, the undersigned United States Magistrate Judge RECOMMENDS that the presiding United States District Judge DENY Defendant's motion to dismiss appointed counsel and represent himself.

## V.    INSTRUCTIONS FOR SERVICE

The Clerk of Court is DIRECTED to send a copy of this FCR to each party by the most efficient means available.

ENTERED on March 12, 2026.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, FED. R. CIV. P. 5(b)(2)(C), or transmission by electronic means, FED. R. CIV. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b), FED. R. CIV. P. 72(b)(2), *and* FED. R. CIV. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections

with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendations set forth by the Magistrate Judge and accepted by the District Judge. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).